UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
KOLMAR AMERICAS, INC.

                Plaintiff,

v.

FUSION RENEWABLES LLC,

                Defendant.
-----------------------------------------------------------X

Case No: 14 CV 0948

JUDGE STEIN

COMPLAINT

Jury Demanded

*RECEIVED FEB 14 2014 U.S.D.C. S.D.N.Y. CASHIERS*

Plaintiff, Kolmar Americas, Inc. ("Kolmar" or "Plaintiff"), by its attorneys Crowell & Moring, LLP, for its Complaint against the Defendant, Fusion Renewables LLC ("Fusion Renewables" or "Defendant"), respectfully alleges, upon information and belief, as follows:

## NATURE OF THE ACTION

1. This is a breach of contract and unjust enrichment action arising out of the sale and delivery by Defendant Fusion Renewables of invalid Renewable Identification Numbers ("RINs") to Plaintiff Kolmar. RINs are credits that are issued for each gallon of renewable fuel that satisfy the requirements of the U.S. Environmental Protection Agency's ("EPA") Renewable Fuel Standard program (40 C.F.R. pt. 80).

2. Pursuant to three agreements entered into by the parties in 2011 (collectively, the "Agreements"), Fusion Renewables agreed to deliver, and Kolmar agreed to buy, Tallow Methyl Ester (also known as TME) B100 Biodiesel with an attached 6.99 million RINs. Each of the Agreements specified that Fusion Renewables would deliver the RINs in full compliance with all applicable laws. Fusion Renewables also agreed to indemnify Kolmar in the event that any of the transferred RINs were determined to be invalid.

3. On December 18, 2013, pursuant to its regulatory powers, the EPA announced that 5,577,927 of the 6.99 million RINs transferred to Kolmar by Fusion Renewables are invalid.

4. Under the Agreements, Kolmar is entitled to replacement RINs or the fair market price of each invalid RIN that Fusion Renewables transferred to Kolmar.

5. Kolmar now asserts a claim against Fusion Renewables for breach of the Agreements and seeks relief from this Court, including: (a) a judgment in Kolmar's favor and against Fusion Renewables for breach of contract in the amount of $2,510,067.00, the market price of the 5,577,927 invalid RINs delivered by Fusion Renewables; (b) a judgment in Kolmar's favor and against Fusion Renewables for unjust enrichment, requiring Fusion Renewables to make restitution to Kolmar in the amount that Fusion Renewables has been unjustly enriched; (c) reasonable attorneys' fees and court costs; and (d) such other and further relief as the Court may deem just and proper.

**PARTIES**

6. Kolmar is a corporation organized under the laws of the State of Delaware, with its principal place of business at 10 Middle Street – PH, Bridgeport, CT 06604.

7. Fusion Renewables is a limited liability company organized under the laws of the State of Nevada, with its principal place of business at 1626 Harbor Drive, Milwaukee, WI 53207.

8. Garland Middendorf is a member of Fusion Renewables and a domicile of the State of Missouri, with a residence at 2451 N. Route J, Rocheport, MO 65279.

9. Kip Middendorf is a member of Fusion Renewables and a domicile of the State of Kentucky, with a residence at 1209 Winding Creek Place, Louisville, KY 40245.

3. On December 18, 2013, pursuant to its regulatory powers, the EPA announced that 5,577,927 of the 6.99 million RINs transferred to Kolmar by Fusion Renewables are invalid.

4. Under the Agreements, Kolmar is entitled to replacement RINs or the fair market price of each invalid RIN that Fusion Renewables transferred to Kolmar.

5. Kolmar now asserts a claim against Fusion Renewables for breach of the Agreements and seeks relief from this Court, including: (a) a judgment in Kolmar's favor and against Fusion Renewables for breach of contract in the amount of $2,510,067.00, the market price of the 5,577,927 invalid RINs delivered by Fusion Renewables; (b) a judgment in Kolmar's favor and against Fusion Renewables for unjust enrichment, requiring Fusion Renewables to make restitution to Kolmar in the amount that Fusion Renewables has been unjustly enriched; (c) reasonable attorneys' fees and court costs; and (d) such other and further relief as the Court may deem just and proper.

**PARTIES**

6. Kolmar is a corporation organized under the laws of the State of Delaware, with its principal place of business at 10 Middle Street – PH, Bridgeport, CT 06604.

7. Fusion Renewables is a limited liability company organized under the laws of the State of Nevada, with its principal place of business at 1626 Harbor Drive, Milwaukee, WI 53207.

8. Garland Middendorf is a member of Fusion Renewables and a domicile of the State of Missouri, with a residence at 2451 N. Route J, Rocheport, MO 65279.

9. Kip Middendorf is a member of Fusion Renewables and a domicile of the State of Kentucky, with a residence at 1209 Winding Creek Place, Louisville, KY 40245.

10. Chadwick Middendorf is a member of Fusion Renewables and a domicile of the State of Kentucky, with a residence at 7417 Cedar Bluff Court, Prospect, KY 40059.

11. Thorfinn Enterprises LLC is a member of Fusion Renewables organized under the laws of the State of New York with its principal place of business at 4 W. 109th Street, Apartment 6F, New York, NY 10025.

12. John Fox is the sole member of Thorfinn Enterprises LLC and a domicile of the State of Virginia, with a residence at 2425 Grove Avenue, Richmond, VA 23220.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

14. Venue is proper in the Southern District of New York in accordance with 28 U.S.C. § 1391(a) and (c). Pursuant to the Agreements, Fusion Renewables expressly consented to the exclusive jurisdiction of New York federal and state courts, and expressly agreed that New York is the parties' exclusive forum for litigation arising out of or related to the Agreements.

## FACTUAL ALLEGATIONS

15. Plaintiff Kolmar is in the business of sourcing and marketing petroleum and petrochemical products, including biofuel and other renewable fuels, and RINs.

16. Defendant Fusion Renewables is a biofuel and chemical marketing, blending, and distribution company.

17. The EPA regulates the production of renewable fuels and RINs. The EPA's regulations, known as the Renewable Fuel Standard program, were expanded under the Energy Independence and Security Act ("EISA") of 2007. The expanded regulations ("RFS2

3

Regulations") are codified at 40 C.F.R. pt. 80, subpt. M. The RFS2 Regulations set forth requirements and conditions for the generation of valid RINs.

18. Some of the goals of the RFS2 program are to achieve significant reductions in greenhouse gas emissions from the use of renewable fuels, reduce the amount of imported petroleum, and encourage the development and expansion of our nation's renewable fuels sector.

19. On January 10, 2011, Kolmar and Fusion Renewables entered into the first of the three Agreements (this first Agreement being Kolmar Transaction Number S1007126.P), for the sale and purchase of biodiesel with associated RINs at a ratio of 1.5 gallon-RIN per gallon of biodiesel.

20. On February 16, 2011, Kolmar and Fusion Renewables entered into the second Agreement (this second Agreement being Kolmar Transaction Number S1007327.P), for the sale and purchase of biodiesel with associated RINs at a ratio of 1.5 gallon-RIN per gallon of biodiesel.

21. On March 5, 2011, Kolmar and Fusion Renewables entered into the third Agreement (this third Agreement being Kolmar Transaction Number S1007412.P), for the sale and purchase of biodiesel with associated RINs at a ratio of 1.5 gallon-RIN per gallon of biodiesel.

22. Each Agreement contained identical Representations and Warranties and Remedies clauses. Fusion Renewables warranted that the RINs would be properly generated and transferred in compliance with all applicable laws, including but not limited to the RFS2 Regulations.

23. Each of the Agreements expressly incorporated Kolmar's General Terms and Conditions, which terms include that the parties to the Agreements submit to the exclusive

jurisdiction of the state and federal courts in New York. The General Terms and Conditions also provide, expressly, that the "prevailing Party" in any litigation between Kolmar and Fusion Renewables "shall be awarded its reasonable attorney's(s') fees and the costs and expenses it incurred to enforce its rights under this Agreement."

24. Each of the Agreements contained a remedy provision in the event that Fusion Renewables failed to transfer valid RINs to Kolmar. Specifically, the Agreements provided that, if Fusion Renewables failed to deliver valid RINs,

> [T]hen upon written notice from Buyer and at Buyer's sole discretion, Seller shall, for each valid gallon-RIN that Seller failed to transfer: (a) timely provide gallon-RINs of the same type and vintage year specified in this agreement; or (b) pay Buyer the market price, as reasonably determined by Buyer as of the date of buyer's notice, for gallon-RINs of the same type and vintage year specified in this agreement.

25. Pursuant to the Agreements, between January 11, 2011, and June 30, 2011, Fusion Renewables transferred a total of 6.99 million RINs to Kolmar. All of the transferred RINs were generated by an Indiana-based company, e-Biofuels LLC.

26. On December 18, 2013, pursuant to an investigation, the EPA issued a Notice of Violation (NOV) declaring all RINs generated by e-Biofuels between July 1, 2010 and June 2, 2011 invalid in violation of the RFS2 Regulations.

27. Of the 6.99 million RINs transferred to Kolmar by Fusion Renewables, 5,577,927 were generated by e-Biofuels within the EPA-described generation dates, *i.e.* July 1, 2010 to June 2, 2011, rendering them invalid.

28. On December 18, 2013, David Astrauckas, on behalf of Kolmar, discussed the invalidation of approximately 5.6 million of the transferred RINs with John Fox, representing Fusion Renewables.

29. Later that same day, Mr. Astrauckas emailed Mr. Fox and notified Fusion Renewables that Kolmar would be seeking valid replacement RINs to make up for the nearly 5.6 million invalid RINs transferred by Fusion Renewables as per the Agreements.

30. On January 8, 2014, Paul F. Teta, on behalf of Kolmar, sent a follow-up letter to Fusion Renewables, electing, at Kolmar's sole discretion, to invoke its contractual remedy of payment of the market price of the invalid RINs that Fusion Renewables transferred to Kolmar.

31. The demand letter gave Fusion Renewables until January 17, 2014 to remit payment.

32. On January 25, 2014, Mr. Fox replied by letter, denying liability for the transfer of the invalid RINs.

33. On January 30, 2014, Mr. Teta spoke with Mr. Fox and requested a definitive plan to receive either valid replacement RINs or their equivalent value by 5:00 PM Eastern time on Monday, February 3, 2014. No plan was received.

34. On February 6, 2014, Mr. Teta sent a further demand letter to Fusion Renewables, once again electing, at Kolmar's sole discretion, to invoke its contractual remedy of the market price of the invalid RINs Fusion Renewables transferred to Kolmar. That market price, determined by Kolmar as of February 5, 2014, amounts to $2,510,067.00.

35. The second demand letter gave Fusion Renewables until 4:00 PM Eastern time on Friday, February 7, 2014, to cure its breach. Fusion Renewables did not respond.

36. In breach of the Agreements, Fusion Renewables has failed to provide Kolmar the market price of the RINs or replace the invalid RINs.

37. As a result of Fusion Renewables' breach of the Agreements, Kolmar has suffered damages in the amount of $2,510,067.00, the fair market value of RINs of the same type and vintage year as the invalid RINs, as specified in the Agreements.

### FIRST CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

38. Kolmar repeats and realleges each and every allegation set forth in Paragraphs 1 through 35 as though fully set forth herein.

39. Kolmar entered into a series of Agreements with Fusion Renewables that required Fusion Renewables to deliver biodiesel with attached RINs at a ratio of 1.5 gallon-RIN per gallon of product. Per the Agreements, and warranted by Fusion Renewables, the RINs were to be transferred in full compliance with all applicable laws, including specifically the RFS2 Regulations.

40. Fusion Renewables transferred 5,577,927 invalid RINs to Kolmar. Fusion Renewables' transfer of invalid RINs was in breach of Fusion Renewables' express warranties in the Agreements.

41. Each of the Agreements contained a remedy clause for the transfer of invalid RINs: upon written notice from Kolmar, and at Kolmar's sole discretion, Fusion Renewables must provide replacement RINs of the same type and vintage year as specified in the Agreements or payment of market price, as reasonably determined by Kolmar as of the date of Kolmar's notice, for RINs of the same type and vintage year as specified in the Agreements.

42. Fusion Renewables failed to pay Kolmar the market price of the RINs at the request of Kolmar upon learning that the EPA had rendered the RINs invalid, or provide replacement RINs.

43. Fusion Renewables' failure to replace the invalid RINs or to provide payment of their market price is a breach of the Agreements.

44. Fusion Renewables' breach of the Agreements caused Kolmar damages amounting to $2,510,067.00. This amount reflects the fair market value of RINs as specified in the Agreements.

45. Based on the foregoing, Kolmar demands judgment in the sum of $2,510,067.00 for damages incurred for breach of contract, along with its attorneys' fees and costs, as provided under the Agreements.

## SECOND CLAIM FOR RELIEF
## (UNJUST ENRICHMENT)

46. Kolmar repeats and realleges each and every allegation set forth in Paragraphs 1 through 43 as though fully set forth herein.

47. Fusion Renewables was enriched by its receipt of payment for RINs for which Fusion Renewables did not provide valid RINs in exchange.

48. The enrichment of Fusion Renewables was at the expense of Kolmar.

49. It would be unjust, and against equity and good conscience, to allow Fusion Renewables to retain the benefits it received from Kolmar.

50. By reason of the above, Kolmar is entitled to an award of compensatory damages in an amount to be determined at trial.

WHEREFORE, in view of the foregoing, Kolmar respectfully requests that this Court enter judgment in Kolmar's favor, granting Kolmar the following relief:

(a) On the first cause of action, entry of judgment in an amount to be determined at trial, but in no event less than $2,510,067.00, for damages resulting from Fusion Renewables' breach of contract;

(b) On the second cause of action, requiring Fusion Renewables to make restitution to Kolmar in the amount that Fusion Renewables has been unjustly enriched;

(c) Pre-judgment interest pursuant to applicable law, together with interest on all damages from the date judgment is entered until complete payment of the judgment is made;

(d) Reasonable attorneys' fees and court costs; and

(e) For such other, further and different relief as this Court deems just, proper and equitable.

Dated: New York, New York
February 14, 2014

Respectfully submitted,

**CROWELL & MORING LLP**

By: _____
Amal Bouhabib
John N. Thomas
590 Madison Avenue
New York, New York 10022
(212) 223-4000
*Attorneys for Plaintiff Kolmar Americas, Inc.*